**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STACEY PILLING,<br><br>                Plaintiff,<br><br>     v.<br><br>LLOYD J. AUSTIN, III,<br>*as U.S. Secretary of Defense*<br><br>and<br><br>PETER FOREMAN,<br><br>                Defendants. | Civil Action No. 24-cv-259<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION & ORDER

Plaintiff, Stacey Pilling, sued her employer, Secretary of Defense, Lloyd Austin, and a colleague, Peter Foreman, (collectively "defendants") for Title VII and tort violations. Compl. at 18-25, ECF No. 2. Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue. Defs.' Mot. Dismiss or Transfer Venue ("Defs.' MTD"), ECF No. 12. Given that the parties agree that venue is improper in the District of Columbia, *see* Defs.' Mem. Supp. MTD or Transfer Venue ("Defs.' Mem.") at 6, ECF No. 12-1; Pl.'s Opp'n MTD ("Pl.'s Opp'n") at 1, ECF No. 15, for the reasons set out below, this matter is transferred to the Western District of Michigan.

**I.    BACKGROUND**

The factual background and procedural history are described below.

    **A.    Factual Background**

During the relevant time period, plaintiff worked for Disposition Services within the Defense Logistics Agency ("DLA"), a unit of the Department of Defense, in Battle Creek,

Michigan. Compl. ¶¶ 29-30. Defendant Foreman was Chief of Staff ("COS") of the unit and initially higher ranking than plaintiff, though he was not her supervisor. *Id.* ¶¶ 31, 33-34.[1] Plaintiff describes being harassed by the COS "on an almost daily basis," including such comments about plaintiff's clothing as "why are you wearing golf pants to work," *id.* ¶¶ 35-38, and immature comments about plaintiff's use of the bathroom, *id.* ¶ 39. These comments extended to remarks on plaintiff's body; for example, before a 5K at their place of work, the COS "went out of his way to humiliate her," commenting on her "chicken legs" and her slow running pace. *Id.* ¶ 47. He also allegedly antagonized plaintiff with inappropriate tricks, such as placing a fart machine and a fart bomb in her office, putting a dead bat on her desk, and throwing a "live cockroach towards [her] breast area." *Id.* ¶¶ 40, 42, 46, 52. He put plaintiff into a headlock "jokingly" multiple times despite requests to stop and then continued to threaten to do so. *Id.* ¶¶ 56, 64. The COS's alleged misconduct extended to comments about plaintiff's work as well, including "belittl[ing] Plaintiff in front of a room" of more senior colleagues and "mak[ing] disparaging comments about [] Plaintiff's intellect" at quarterly meetings, and so forth. *Id.* ¶¶ 41, 44, 48. He often noted how she had a PhD and should have caught more mistakes. *Id.* ¶¶ 44, 48.

Others noticed this conduct and shared their sympathy, *id.* ¶ 49, and plaintiff complained to superiors, the DLA Sexual Assault Response Coordinator (SARC), an EEOC contact, and HR, *id.* ¶¶ 6, 8-9, 54-55, 58-63. The SARC sent her to the EEOC, *id.* ¶ 6; her EEOC contact sent her to HR, noting that her complaints could better be addressed there, *id.* ¶¶ 59-60. HR informed her that they would initiate an investigation into her claims. *Id.* ¶¶ 8, 65.

---

[1] During the period of alleged misconduct, plaintiff obtained the same GS-level of employment as the COS, although "his position as the COS was artificially elevated so that he had operational control." Compl. ¶ 43.

Shortly thereafter, plaintiff left her position at Disposition Services to move to DLA Headquarters on August 15, 2021. *Id.* ¶ 65. A few months later, she learned an investigation had never been initiated by HR and reached out to the DLA Chief of Staff, who initiated an investigation with the Office of the Inspector General (OIG) in April 2022. *Id.* ¶¶ 9, 66, 68. Later that month, plaintiff reached out to OIG Special Agent David York "for the purpose of making and confirming the content of a written complaint," and later the same month, requested documents from the investigation, which revealed that her allegations were substantiated. *Id.* ¶¶ 11, 13, 15, 70.

### B.     Procedural Background

In September 2023, plaintiff, through her lawyer, sought a "right to sue" letter from the Special Agent "for the purpose of commencing a civil action to recover damages," and was redirected to the EEO office. *Id.* ¶¶ 16-17. When the EEO Office indicated that they had no complaint on record, plaintiff emailed the EEO a "formal charge of discrimination," describing plaintiff's efforts to preserve that claim. *Id.* ¶¶ 20, 22.

Two months later, on January 29, 2024, plaintiff initiated this lawsuit asserting six claims against the Secretary of Defense and against COS Foreman, in his personal and official capacity, for sexual harassment and hostile work environment under Title VII, sexual harassment and hostile work environment under the D.C. Human Rights Act, battery, and intentional infliction of emotional distress. *See* Compl., ECF No. 2 (submitting errata two weeks later to replace the original complaint at ECF No. 1).

Defendants now seek dismissal of the complaint or in the alternative, to transfer venue to the Western District of Michigan, pursuant to Federal Rule of Civil Procedure 12(b)(3). Defs.' MTD; Defs.' Mem. at 6. Defendants also argue that the Chief of Staff should be dismissed for lack of personal jurisdiction, under Rule 12(b)(2), and that all of plaintiff's claims fail to state a

claim upon which relief could be granted, under Rule 12(b)(6). *Id.* at 7-10, 12-28. In particular, defendants contend that plaintiff failed to state claims under the D.C. Human Rights Act because the alleged conduct did not occur in the District of Columbia. *Id.* at 26.

Plaintiff makes two concessions in her opposition: first, she withdraws her claims under the D.C. Human Rights Act (counts three and four), and second, she concedes that venue is improper in the District of Columbia. Pl.'s Opp'n at 1. Otherwise, she opposes dismissal on the remaining counts and requests transfer of the case to the Eastern District of Virginia. *Id.*

## II.    LEGAL STANDARD

Under the Federal Rule of Procedure 12(b)(3), a party may move to dismiss a case for "improper venue." Fed. R. Civ. P. 12(b)(3). The federal venue statute requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case filed "in the wrong division or district." 28 U.S.C. § 1406(a). Whether "venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 55 (2013). In determining whether venue is proper, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true [and] draws all reasonable inferences from those allegations in the plaintiff's favor." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (quoting *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011), *aff'd*, 602 F. App'x 836 (D.C. Cir. 2015).

If venue is improper, the decision whether to dismiss or transfer 'in the interest of justice' under § 1406(a) is committed to the discretion of the district court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). If transferring, the court may transfer the case "to any district or division in which it could have been brought." § 1406(a). That means any court where venue is proper and where personal jurisdiction can be exercised over the defendants. *See*

4

*Sharp Elecs. Corp. v. Hayman Cash Reg. Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981); *see, e.g.*, *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 410 (D.D.C. 2017); *Coltrane v. Lappin*, 885 F. Supp. 2d 228, 235-36 (D.D.C. 2012); *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009).

### III.  DISCUSSION

Both parties agree that venue is improper in the District of Columbia and request that the case be transferred elsewhere. Defs.' Mem. at 6-7; Pl.'s Opp'n at 1; Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 1, ECF No. 16. The Court agrees that transfer of plaintiff's Title VII claims is appropriate, and Western District of Michigan is a proper court to adjudicate her remaining claims.[2]

#### A.    Decision to Transfer Under § 1406(a)

As the parties concede, venue in this case is improper in the District of Columbia. For Title VII claims, venue is proper in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Plaintiff does not make any connection to the District of Columbia under any of these provisions, nor is any apparent from her pleadings. Therefore, transfer or dismissal under 28 U.S.C. § 1406(a) is appropriate. *See Johnson v. Deloitte Servs., LLP*, 939 F. Supp. 2d 1, 6 (D.D.C. 2013) ("[E]ven when only some of the claims

---

[2]    Consequently, defendants' multiple other arguments for dismissal need not be addressed by this Court.

5

in the complaint arise under Title VII, courts regularly transfer the entire case if they find venue for the Title VII claims to be improper.").[3]

The "standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a [plaintiff's] ability to obtain review." *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001); *see also Fam*, 236 F. Supp. 3d at 410 (describing the "strong presumption in favor of transfer"); *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 218 (D.D.C. 2014) ("[T]he interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." (quoting *Johnson*, 939 F. Supp. 2d at 6)); 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD D. FREER, FEDERAL PRACTICE & PROCEDURE § 3827 (4th ed. 2024) ("District courts also are likely to order transfer rather than dismissal if it would be more efficient or economical to do so or if the plaintiff's belief that venue was proper was in good faith and reasonable. . . . [I]t is [also] enough simply that the district judge, in the sound exercise of discretion, concludes that the transfer is in the interest of justice."). The Court need not have personal jurisdiction over the defendants in order to transfer under § 1406(a). *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

In determining whether the "standard remedy" of transfer, *National Wildlife Federation*, 237 F.3d at 674, is appropriate under § 1406(a), consideration of "the interest of justice" is required. 28 U.S.C. § 1406(a) (directing a court "in which is filed a case laying venue in the wrong . . . district [to] dismiss, or if it be *in the interest of justice*, transfer such case to

---

[3] The parties both cite to 28 U.S.C. § 1404(a), which allows a court to transfer a matter "[f]or the convenience of parties and witnesses, in the interest of justice." Defs.' Mem. at 29; Pl.'s Opp'n at 10; Defs.' Reply at 18. That provision is generally used where venue is proper, whereas § 1406 is the applicable provision where venue is *improper*, as it is here. *See Liu v. Mayorkas*, -- F. Supp. 3d --, 2024 WL 3010847, at *2 (D.D.C. June 14, 2024) ("Sections 1404(a) and 1406(a) are mutually exclusive, with Section 1404(a) governing the analysis when venue in the original district is proper and Section 1406(a) controlling when the original venue is improper."); *see also Fam*, 236 F. Supp. 3d at 407 (distinguishing between the two statutes and explaining that factors of convenience are relevant to transfers under § 1404(a), not § 1406(a)).

any district . . . which it could have been brought.") (emphasis supplied).  The "interest of justice" may be served by transfer where this action would "save the parties the time and expense associated with refiling."  *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 284 (D.D.C. 2015).  In addition, consideration may be given to "whether transfer would prejudice Defendant's position on the merits," *James*, 639 F. Supp. 2d at 15 (quoting *McQueen v. Harvey*, 267 F. Supp. 2d 184, 188 (D.D.C. 2008)), though "[g]enerally, defendants are not significantly prejudiced by transfer,"  *Fam*, 236 F. Supp. 3d at 409; *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983) (observing that "[r]efusal to transfer spells the end to the action, while transfer would not prejudice the defendants' position on [the] merits").

Here, defendants have not described any prejudice they would experience by a transfer and agree that transfer may be granted without evaluating their arguments for dismissal.  Defs.' Reply at 1 (citing, *e.g.*, *McGrone v. Austin*, No. 21-cv-472 (RC), 2022 WL 888194, at *1 (D.D.C. Mar. 25, 2022); *Scurlock v. Lappin*, 870 F. Supp. 2d 116, 117, 122-23 & n.8 (D.D.C. 2012), for the principle that the court need not evaluate further arguments for dismissal when transferring); *see also, e.g.*, *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 24-25 (D.D.C. 2009) (holding that the transferee court is the appropriate court to address the merits of plaintiff's claims and citing authority for the proposition that it is "fitting to leave all decisions on the merits to [the transferee] district court" (alteration in original) (quoting *Hafstad v. Hornick*, No. 86-cv-2811 (TAF), 1987 WL 10871, at *3 (D.D.C. 1987))); *Ash v. Buttigieg*, No. 21-cv-2468 (TNM), 2022 WL 1125559, at *3 (D.D.C. Apr. 15, 2022) ("The Court also declines to consider the [defendant's] remaining arguments for dismissal.  They may be raised in the

[transferee court] as appropriate.").[4]  The interest of justice therefore counsels transferring the Complaint and having the transferee court take up defendants' other arguments for dismissal.

## B.       Transferee Jurisdiction

Transfer of a case under § 1406 may be to any jurisdiction where the case could have been brought, *i.e.*, where venue and personal jurisdiction would be proper.  *See Sharp Elecs. Corp.*, 655 F.2d at 1230.  While defendants request transfer to the Western District of Michigan, where the relevant conduct occurred, Defs.' Mem. at 29, plaintiff asks for transfer to the Eastern District of Virginia, where plaintiff resides and defendant Department of Defense is headquartered and where, according to plaintiff, "the pertinent records are maintained," Pl.'s Opp'n at 1.

This case could have been brought in the Western District of Michigan.  Under § 2000e-5(f)(3), venue for the Title VII claims is proper in the Western District of Michigan, where the allegedly unlawful employment practice occurred—specifically in Battle Creek, Michigan, which lies in the Western District.  42 U.S.C. § 2000e-5(f)(3).  Whether plaintiff's tort claims fall under the Federal Tort Claims Act or state common law, venue would also lie in Michigan.  *See* 28 U.S.C. § 1402(b) (establishing that venue for a tort claim against the United States for

---

[4]       The Court may "take a 'peek at the merits'" when deciding whether outright dismissal would be more appropriate than transfer.  *Laukus v. United States*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999)); *Fam*, 236 F. Supp. 3d at 409-10.  The D.C. Circuit has held that dismissal may be proper where the complaint suffers from serious substantive defects, especially when such defects make a proper venue determination difficult.  *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998).  For example, cases may be dismissed rather than transferred where claims would be barred by res judicata or the *Rooker-Feldman* doctrine, *McDermott v. BB&T Bank Corp.*, 227 F. Supp. 3d 34, 35-36 (D.D.C. 2017); *Walsh v. Bank of Am. NA*, 113 F. Supp. 3d 108, 114 (D.D.C. 2015); *Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 132 (D.D.C. 2013), where violations of due process rights are alleged against non-state actors, *Williams v. Wells Fargo Bank N.A.*, 53 F. Supp. 3d 33, 38 (D.D.C. 2014), or where the requisite administrative exhaustion for claims is lacking, *Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010).  While defendants here assert that plaintiff's remaining claims suffer from several fundamental defects, none are so obvious that dismissal is warranted without further consideration, *see Fam*, 236 F. Supp. 3d at 410 n.2 ("Although defendants also argue the plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted, determining the merits of those motions would require more than merely taking a 'peek' at the merits of the plaintiff's claims."), which may be afforded by the transferee court.

damages caused by the wrongful act of any employee of government, 28 U.S.C. § 1346(b), is proper in the judicial district "wherein the act or omission complained of occurred"); 28 U.S.C. § 1391(b)(2) (establishing venue generally in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").[5]

The Western District of Michigan would also have personal jurisdiction over defendants. Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal district court has jurisdiction over a defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Michigan's long-arm statute provides for personal jurisdiction over any individual or corporation "transact[ing] . . . any business within the state" or "doing or causing an act to be done . . . in the state resulting in an action for tort." Mich. Comp. Laws §§ 600.705(1)-(2), 600.715(1)-(2). Both defendants satisfy this standard and also fall within the bounds of due process, seeing as the Department of Defense and the COS both "purposefully avail[ed]" themselves "of the privilege of conducting activities within the forum State" by operating and working in, respectively, the DLA Office there, *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), and plaintiff's claims "arise out of" and "relate to" defendants' contacts with the forum—i.e., the work at DLA, *id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)). *See also Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (establishing the same personal jurisdiction standard for the circuit in

---

[5] Generally, when "a case involves more than one cause of action, venue must be proper as to each claim." *Relf v. Gasch*, 511 F.2d 804, 807 n.12 (D.C. Cir. 1975). "Under one approach to a multiple claim action," however, "if one of the claims can be considered the primary one, then the claims must be brought where venue is proper for that principal cause of action, particularly 'if the principal cause of action is governed by a narrower venue provision than the secondary cause of action.'" *Walden v. Locke*, 629 F. Supp. 2d 11, 15 (D.D.C. 2009) (quoting *Ifill v. Potter*, No. 05-cv-2320 (RWR), 2006 WL 3349549, at *2 (D.D.C. Nov. 17, 2006)). Title VII is considered "the principal cause of action for venue purposes in employment discrimination cases." *Id.* Regardless, venue is proper for all claims and all defendants in Michigan.

9

which the Western District of Michigan sits); *James*, 639 F. Supp. 2d at 15-16 (applying the law of the transferee court's circuit when determining whether personal jurisdiction would be proper there).  Both defendants could expect to be hailed into court in Michigan and will face limited burden doing so, given that the COS lives there and the Department of Defense operates there. Personal jurisdiction is therefore consistent with "traditional notions of fair play and substantial justice."  *Sullivan*, 79 F.4th at 670, 674 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267-68 (6th Cir. 1996)).

Plaintiff makes no argument that the Western District of Michigan is not a proper venue, nor that the Eastern District of Virginia is more suitable.  While the Eastern District may be another proper venue and one more convenient for plaintiff, the claims arise from conduct that occurred exclusively in Michigan, and the evidence and witnesses will be centered there. The interest of justice therefore weighs in favor of transferring the Complaint to the Western District of Michigan.  *See Hoskins v. Napolitano*, 842 F. Supp. 2d 8, 11 (D.D.C. 2012) (deciding to transfer under § 1406(a) to the district where the challenged conduct occurred and records were kept, explaining that it was more appropriate than the alternative district plaintiff suggested because "none of the specific events giving rise to [his] complaint took place there).[6]

Defendants may renew their 12(b)(6) challenges for failure to state a claim before that court.  *Liu v. Mayorkas*, -- F. Supp. 3d --, 2024 WL 3010847, at *3 n.2 (D.D.C. June 14, 2024) (noting that defendants could renew their 12(b)(6) arguments before the transferee court).

---

[6] Defendants' arguments about why the Western District of Michigan is a more convenient venue address factors associated with a § 1404(a) analysis, which is technically "irrelevant to this case, where the plaintiff's complaint has, as explained above, simply been filed in the wrong venue." *Fam*, 236 F. Supp. 3d at 407. Nonetheless, these considerations of convenience for the parties and witnesses are relevant to deciding between two proper venues in a § 1406 case. *See, e.g.*, *Jones v. United States*, 820 F. Supp. 2d 58, 62 (D.D.C. 2011) (considering some of the § 1404(a) factors, which guide whether a matter should be transferred "for the convenience of parties and witnesses," including where the events took place and where plaintiff resides, in order to "decid[e] among proper venues" in transferring under § 1406(a)).

## IV. CONCLUSION AND ORDER

Venue for this case is improper in the District of Columbia. For the reasons explained above, the Complaint is transferred to the Western District of Michigan. Accordingly, it is hereby—

**ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, to Transfer, ECF No. 12, is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that this matter shall be **TRANSFERRED** to the U.S. District Court for the Western District of Michigan; and it is further

**ORDERED** that the Clerk of Court is directed to close this case.

Date: November 26, 2024

_____
**BERYL A. HOWELL**
United States District Judge