UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY PILLING,

Plaintiff,

v.

LLOYD AUSTIN, as U.S. SECRETARY OF DEFENSE, and PETER FOREMAN individually and in his official capacity,

Defendants.
_______________________________________/

Case No. 1:24-cv-01293

Hon. Hala Y. Jarbou
U.S. District Chief Judge

Hon. Phillip J. Green
U.S. Magistrate Judge

**DEFENDANTS' MOTION TO DISMISS OR**
**ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Defendants Lloyd Austin, as U.S. Secretary of Defense, and Peter Foreman, individually and in his official capacity, move to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6), or alternatively, for summary judgment under Rule 56. In support of the motion, the Defendants rely upon the accompanying memorandum.

Under W.D. Mich. LCivR 7.1(d), Defendants sought to ascertain whether Plaintiff opposes this motion. Defendant emailed Plaintiff's counsel on December 18, 2024, and requested concurrence. Plaintiff did not concur.

Dated: December 23, 2024

MARK A. TOTTEN
United States Attorney

*/s/ Carolyn A. Almassian*
CAROLYN A. ALMASSIAN (P63229)
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
Carolyn.Almassian@usdoj.gov
Attorney for Defendant

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STACEY PILLING,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD AUSTIN, as U.S. SECRETARY OF DEFENSE, and PETER FOREMAN individually and in his official capacity,<br><br>Defendants.<br>_______________________________________/ | Case No. 1:24-cv-01293<br><br>Hon. Hala Y. Jarbou<br>U.S. District Chief Judge<br><br>Hon. Phillip J. Green<br>U.S. Magistrate Judge |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff, Stacey Pilling, an employee of the Defense Logistics Agency ("Agency"), a component of the Department of Defense ("Department"), brings suit against Lloyd Austin, as Secretary of the Department and Peter Foreman, a supervisor. Her claims fail for numerous reasons and the Court should dismiss the complaint against both defendants. First, Pilling's claims under Title VII, 42 U.S.C. §2000e, *et seq*. should be dismissed because she failed to exhaust her administrative remedies–the Agency has no record of Pilling's Equal Opportunity Employment (EEO) complaint as required. Even if Pilling filed an EEO complaint, as she alleges, she filed it too soon. Additionally, the complaint does not plausibly allege discrimination based on sex and Title VII is not a general prohibition against harassment. Pilling also attempts to bring Title VII claims against Foreman, but he is not an appropriate defendant. Second, Pilling's claims under the theories of battery and intentional infliction of emotional distress should be dismissed because Pilling failed to name the United States as a defendant for her attempted tort claims, she did not

exhaust her administrative remedies under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2670, *et seq*., and the United States has not waived sovereign immunity for the intentional tort claims in her complaint. Third, Pilling has withdrawn her state claims under the D.C. Human Rights Act. For these reasons, the Court should dismiss Pilling's complaint with prejudice.

**BACKGROUND**

Defendants assume the following facts, taken from Pilling's complaint, to be true solely for the purpose of evaluating her complaint's sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At all times, Pilling worked at the Agency in Battle Creek, Michigan. (Compl. ¶¶ 24, 29, PageID.5–7.) In June 2020, the Agency promoted Plaintiff to the position of Director of Disposition Services Resource Management. (*Id.* at ¶ 30, PageID.7.) Peter Forman was the Disposition Services' Chief of Staff. (*Id.* at ¶ 31, PageID.7.) Pilling alleges that in July 2019, Foreman began harassing her on a nearly daily basis. (*Id.* at ¶ 35.) According to Pilling, "Foreman made disparaging comments" about and mocked her choice of clothing and shoes, such as asking Pilling "why are you wearing golf pants to work?" and asserting that a leather strip along the toe box of her grey loafers "was made of duct tape." (*Id.* ¶¶ 36-38, 45, PageID.7–8, 11.)

Foreman also allegedly made "comments about [Pilling's] bodily functions when [she] used the bathroom closest to her office (which was also the closest one to Mr. Foreman's office)." (*Id*. at ¶ 39, PageID.8.) For example, Pilling "would enter this bathroom and [ ] Foreman would respond by yelling 'take [an] air freshener with you' or 'are you going to drop a load?' or 'are you taking a deuce?'" (*Id.*) Foreman allegedly "used these refrains frequently," ostensibly "for the purpose of trying to embarrass and harass [Pilling], particularly when other [Agency] employees were within earshot." (*Id.*; *see also id.* at ¶ 45, PageID.10 (similar allegations about Foreman's commentary on Pilling's use of bathrooms).) On certain occasions, "Foreman had a 'fart machine' placed under the conference room table or in [Pilling's] office." (*Id.* at ¶ 40, PageID.8.) When

Pilling "would begin talking, [Foreman] would activate the fart machine," ostensibly "for the purpose of embarrassing and humiliating [her]." (*Id.*)

On one occasion, Pilling was to brief the Agency's incoming director on certain matters. (Compl. ¶ 41, PageID.8.) During a dry run of the briefing, "Foreman said in a loud tone with the other directors present that [Pilling] was not going to present what she had prepared." (*Id.*) He "then proceeded to provide [Pilling] with talking-point notes that fit his narrative." (*Id.*) Pilling found the experience to be "extremely embarrassing . . . because Foreman belittled [her] in front of a room full of . . . senior leaders." *Id.* On another occasion, Pilling smelled "a very strong smell of sewer" as she was returning to her office. (*Id.* at ¶ 42, PageID.9.) "[T]he smell was coming from [Pilling's] side of the hallway and specifically her office" and "was extremely odious," to the point that she went "home for the rest of the day." (*Id.*) She later learned that "Foreman had put a 'fart bomb' in her garbage while she had stepped out." (*Id.*) Foreman "initially denied" doing so, "but later said it was him while laughing." (*Id.*) Once, while Pilling was on leave for a week, "Foreman left a dead bat on [her] desk." (*Id.* ¶ 46, PageID.11.)

During certain quarterly meetings, "Foreman would openly make disparaging comments about [Pilling's] intellect." (*Id*. at ¶ 44, PageID.10.) According to Pilling, "Foreman would review each slide until he found a mistake (even if the slide was produced by one of [Pilling's] peers) and then call [Pilling] into his office and belittle her about how she had a PhD and didn't even see the mistakes." (*Id.*) "'You need to do better!' was a common refrain by Foreman." (*Id.*) "Foreman would frequently engage in this harassment," Pilling alleges, to the point where Pilling "dreaded quarterly strategy plan reviews." (*Id.*) Foreman also "would consistently state that [Pilling's] narration concerning the slides was not good enough and that [she] needed to review the slides presented by her peers to make sure that the ones she presented were 100% proper." (*Id.*)

On September 11, 2020, the Agency conducted a courtyard ceremony to commemorate the September 11 attacks. (Compl. ¶ 47, PageID.11.) Pilling attended the ceremony "wearing running shorts because there was a 5K run immediately after the ceremony." (*Id.*) During this event, "Foreman loudly, and before all Disposition Services employees attending the event[,] stated, while laughing out loud: 'Look at those chicken legs—they are blinding me. So white.'" (*Id.*) "At the start of the 5K event, Foreman openly and in a loud tone repeatedly stated 'you are so slow . . . I could walk faster,' and continuously taunted [Pilling] before, during, and after the race about her running pace" despite that "he personally did not partake in the 5K run." (*Id.*)

On December 7, 2020, during a meeting with senior Agency leaders, Pilling was about to present a report when Foreman asked her "what day it was." (Compl. ¶ 48, PageID11.) Pilling said "'Tuesday,' and then Foreman repeated again 'What day is it?' in a louder tone." (*Id.*) Pilling "replied that she did not know what he meant," and Foreman "proceeded to state how ignorant [Pilling] was because December 7th was the anniversary of the Pearl Harbor attacks on the United States." (*Id.*) Foreman "then stated, 'You think you are so smart because you have a PhD but you don't know anything." (*Id.*) On another day, Pilling "confronted [ ] Foreman about the [alleged] harassment and Foreman replied, "Yes, I am going to be harder on you, I expect more from you than your peers!'" (*Id.* at ¶ 50.)

On one occasion, Foreman and another employee "walked into [Pilling's] office and [ ] proceeded to throw a live cockroach toward [her] breast area." (Compl. ¶ 52, PageID.12.) "The cockroach quickly scurried down under [Pilling's] desk," and the other employee "captured [it] and removed it from [Pilling's] office." *Id.* "Foreman was laughing about the situation the entire time." (*Id.*) On another occasion, Pilling told Foreman, "sometimes you need to slow down and take a break." (*Id.* at ¶ 56, PageID.14.) In response, "Foreman put [Pilling] in a head lock two

times," ostensibly in a "joking" manner "despite [Pilling] asking him to stop." *Id.* About a month later, "Foreman was in [Pilling's] office while [Pilling] was on a phone call and asked [Pilling] several times if she needed to be put in a head lock." (*Id.* at ¶ 64, PageID.16.) Pilling "replied by repeating "No, [n]o I do not. Do not touch me." (*Id.*)

Pilling repeatedly contacted various individuals within the Agency about Foreman's behavior but found their responses unsatisfying. (Compl. ¶¶ 6-23, 57-70, PageID.2–5, 14–17.) Pilling alleges that on November 19, 2023, through counsel, she submitted an Equal Employment Opportunity ("EEO") complaint to the Agency's EEO complaint manager. (*Id.* ¶¶ 18, 22, PageID.4–5.[1]) But to the best of the Agency's knowledge, Pilling never actually submitted an EEO complaint—the Agency has no record of receiving any such EEO complaint from her or her attorney. (Ex. 1, Reitan Decl. ¶¶ 3-8.)

**MOTION STANDARDS**

A challenge to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be a facial attack, which challenges the sufficiency of the plaintiff's factual allegations, or a factual attack, which challenges the fact of subject matter jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In considering a factual attack on subject matter jurisdiction (i.e., failure to exhaust administrative remedies), the court is free to weigh the evidence relating to jurisdiction, and the plaintiff has the burden of proving jurisdiction to survive the motion. *Ritchie*, 15 F.3d at 598. The court can consider affidavits and other evidence outside the pleadings to resolve factual disputes regarding jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986).

[1] Defendants assume for purposes of this motion only that this document was a proper EEO complaint but preserve an argument to the contrary for further proceedings in this case.

Public records may also be considered without converting a motion to dismiss into a motion for summary judgment. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).

A motion under Rule 12(b)(2) challenges the court's personal jurisdiction over a defendant. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff bears the burden of establishing personal jurisdiction. *Theunissen*, 935 F.2d at 1458. "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* Rule 12(b)(6) provides for dismissal where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a valid claim, a complaint must contain . . . allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)). "Though decidedly liberal, this standard does require more than bare assertions of legal conclusions." *LULAC*, 500 F.3d at 527 (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)). A court should dismiss a claim under Rule 12(b)(6) when the plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible only where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the court should accept the complaint's factual allegations as true, the court need not accept legal conclusions, including those that are couched as factual allegations. *Id*. at 677-78.

Under Federal Rule of Civil Procedure 56, the Court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). The rule "isolate[s] and dispose[s] of factually unsupported claims or defenses," and it "should be interpreted . . . to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

A party confronted with a summary judgment motion must support his assertion that a genuine dispute exists by citing to record materials. Fed. R. Civ. P. 56(c)(1). He must put forth "significant probative evidence in support of [his] position" that raises a genuine issue of material fact. *See Wright*, 455 F.3d at 706 (quotations omitted). A factual dispute is "material" if its resolution is determinative of an essential element of the non-moving party's case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one where the non-moving party comes forward with evidence showing that the trier of fact could find in its favor at trial; if it does not, summary judgment must issue. *See Liberty Lobby*, 477 U.S. at 248-49; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT

### I. The complaint fails to state a plausible Title VII claims.

#### A. Plaintiff failed to exhaust her administrative remedies.

Before filing a lawsuit in federal court, a Title VII plaintiff must exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC and receiving a right-to-sue letter. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices

complained of.'" *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)).

"As a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies[.]" *Scott v. Eastman Chemichal Co.*, 275 F. App'x 466, 417–72 (6th Cir. 2008). But as best the Agency can discern, Pilling never filed an EEO complaint. As explained in more detail in the attached declaration, the Agency searched the systems and databases where EEO complaints are stored but did not locate any EEO complaint by Pilling dated November 19, 2023. (Ex. 1, Reitan Decl. ¶¶ 3-8.[2])

Pilling's allegation in her pleadings that she filed an EEO complaint is insufficient. For purposes of Defendants' motion to dismiss, courts are not limited to the four corners of a plaintiff's complaint in determining whether she exhausted administrative remedies but may look through to the underlying EEO administrative record. *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013).

If the Court decides to convert this motion into one for summary judgment to consider the existence of materials concerning the underlying EEO administrative process, the complaint also fails under summary judgment standards. Pilling's allegations in her pleadings are insufficient to show a genuine dispute over whether she filed an EEO complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("the nonmoving party [must] go beyond the pleadings and by her own [evidence] designate specific facts showing that there is a genuine issue for trial" (quotation marks

[2] Prior to filing this motion, Defendants attempted to avoid need for litigation over this issue by asking Pilling's counsel to share a copy of the EEO complaint that Pilling claims to have filed. Counsel declined to do so, however, responding as follows: "Do your own research and look at the complaint." (Ex. 2, Email (July 20, 2024).) Regrettably, then, it is necessary to litigate this issue.

omitted)). In all events, Pilling cannot make the required showing that she filed an EEO complaint, and thus exhausted administrative remedies. For that reason alone, Pilling's Title VII claims fail.

### B. Pilling filed her Title VII claims prematurely.

An employee may file a Title VII claim in court only, as relevant here, "after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit." 42 U.S.C. § 2000e-16(c). As such, an employee in the EEO process must wait 180 days before filing a lawsuit. *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1150 (6th Cir. 1988) (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 361 (1976)). A plaintiff who files suit any earlier than 180 days did not exhaust her administrative remedies. *Andrews v. Potter*, No. 05-70693, 2007 WL 325348, at *2 (E.D. Mich. 2007) (citing *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990). "Congress understood that lengthy delays were part of the administrative process and gave employees the option to proceed to court after 180 days," not earlier. *Howard v. Pritzker*, 775 F.3d 430, 440 (D.C. Cir. 2015). Plaintiff alleges that she filed her formal EEO complaint on November 19, 2023. (Compl. ¶ 22, PageID.5.) Taking this allegation as true, Pilling's Title VII claim is premature, as she filed suit less than 180 days after filing her formal EEO complaint. As such, this Court should dismiss Pilling's Title VII claims.

### C. The complaint does not plausibly allege that Pilling's supervisor's actions were due to her sex.

Title VII is not "a general prohibition against harassment. It only prohibits harassment based on a protected class, i.e., race, color, religion, national origin, or sex." *Lundy v. GMC*, 101 F. App'x 68, 72, 73 n.6 (6th Cir. 2004) (a supervisor's use of profane and vulgar language in reference to the plaintiff without commenting on his religion is not harassment based on a protected class) (citing 42 U.S.C. § 2000e-2(a)(1)). In other words, a hostile work environment is cognizable under Title VII only if but for the fact of the employee's sex, she would not have been the object

of harassment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). Even if Pilling experienced a hostile work environment, she pleads no facts to support a plausible inference that this environment was "because of sex" specifically, as a sex-based Title VII hostile work environment claim requires.[3] *See Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 617 (6th Cir. 2012) (finding no hostile work environment claim existed where the plaintiff demonstrated personal animus but could not show the animus was based on her protected status); *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006) (finding no hostile work environment where the nature of the plaintiff's environment, however unpleasant, was not due to his membership in a protected class). Notably, Pilling's only allegations tying Foreman's behavior to her sex is her bald assertion "that these experiences specifically were intended to harass [her] based on her gender." (Compl. ¶ 44, PageID.9; *see also id.* at ¶ 41, PageID.8 (alleged efforts to belittle Plaintiff "alleged to be completely due to [her] gender").) But this assertion is conclusory, and thus insufficient to plausibly allege that any hostile work environment was due to Pilling's sex. *See Iqbal*, 556 U.S. at 678.

Indeed, Pilling's own pleadings undermine any inference that Foreman's behavior toward her was because of her sex. Pilling alleges that Foreman "belittl[ed]" her male supervisor during "a very contentious meeting" so severely that the supervisor "walked out that day and resigned." (Compl. ¶ 67, PageID.16.) Pilling's allegation that Foreman acted in a similarly inappropriate manner toward a male colleague dilutes the force of any inference that his behavior toward her

[3] Pilling separately pleads claims of "hostile work environment" and "sexual harassment," but Title VII does not recognize a separate claim for sexual harassment other than a hostile work environment claim. *See Faragher v Boca Raton*, 524 U.S. 775, 786-87 (1998) (internal quotation omitted) (stating that a hostile work environment is actionable under Title VII only if the harm is caused by harassment sufficiently severe or pervasive to alter the terms and conditions of the victim's employment and create an abusive working environment).

was because of her sex. *See, e.g., EEOC v. Harbert-Yeargin, Inc.*, 266 F.2d 498, 508 (6th Cir. 2001) (explaining in a sex harassment case that "'Title VII does not cover the 'equal opportunity ... harasser'" "because such person is not *discriminating* on the basis of sex.'" (internal citation omitted)). Pilling's own pleadings also suggest a likelier explanation for Foreman's behavior toward her than sex discrimination—i.e., his insecurity over her superior academic credentials. According to Pilling, Foreman repeatedly belittled her about her PhD. (*See* Compl. ¶ 44, PageID.9 (Foreman "belittle[d] her about how she has a PhD and didn't even see the mistakes")); *id.* ¶ at 48, PageID.11 ("Foreman then stated, 'You think you are so smart because you have a PhD but you don't know anything.").)[4] Indeed, Foreman's statement that he was "going to be harder on" Pilling because he "expect[ed] more from [her] than [her] peers," makes little sense as a reflection of sex discrimination but complete sense as a reflection of anxiety or resentment over Pilling's superior academic credentials. (*See id.* at ¶ 50, PageID12.) Because Pilling's allegations about Foreman's behavior are "not only compatible with, but indeed [ ] more likely explained by, lawful" albeit unsympathetic motives—i.e., jealousy of her superior academic credentials—they do "not plausibly suggest" sex discrimination. *Iqbal*, 556 U.S. at 680, 681 ("Taken as true, these allegations are consistent with" allegations of unlawful discrimination "[b]ut given more likely explanations, they do not plausibly establish this purpose"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (claim fails if plaintiff's allegations are "consistent with" liability "but just as much in line with a wide swath of rational" lawful behaviors).

[4] Foreman holds a Master's Degree. *See Peter Foreman*, Agency Disposition Servs., https://www.dla.mil/Portals/104/Documents/DispositionServices/General%20Web/foremanbio.pdf. *See also* Fed. R. Evid. 201(b); *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of contents of the Bureau of Prisons' website); *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites.").

To be clear, if Pilling's allegations are accurate, then Foreman's challenged behavior was inappropriate, obnoxious, juvenile, bizarre, unprofessional, and unacceptable. Defendants do not condone the behavior that Pilling describes. But there is a difference between behavior—however boorish and inappropriate—that is not because of sex and behavior that is because of sex. Pilling's allegations do not support a plausible inference that Foreman's actions, inappropriate as they may have been, were because of her sex. *See Calloway v. Dowagiac Union Schools*, No. 1:23-cv-1299, 2023 WL 9327198, at *5–6 (W.D. Mich. Dec. 29, 2023) (finding that the plaintiff's allegations that her supervisor harassed, belittled and bullied her failed to allege facts raising a plausible inference that the conduct was based on race, age or sex under Title VII or the Age Discrimination in Employment Act); *Bady v. Illinois Central Railroad Co.*, No. 2:23-cv-2693-MSN-cgc, 2023 WL 2482229, at *5 (W.D. Tenn. March 13, 2023) (conduct including drawing a chalk line down the plaintiff's buttock without his knowledge or consent, posting a photo about it, and making a comment likely to offend the plaintiff is not conduct suitable for the workplace[,] but does not permit the court to draw the inference that the harassment was based on the plaintiff's sex or race); *Fedder v. Ohio Med. Transp., Inc.*, No. 2:23-cv-627, 2023 WL 3437194, at *5 (S.D. Ohio May 12, 2023) (finding that the plaintiff's allegations failed to create a plausible inference of gender-based harassment where the harassment, which was related to the plaintiff's social media posts reflecting anti-law-enforcement views, was not taken because of her sex). This omission is fatal to Pilling's Title VII hostile work environment claim. Although Foreman's alleged actions may have been improper and unprofessional, Pilling does not plausibly allege that they were because of her sex specifically.

### D. Foreman is an improper defendant to Plaintiff's Title VII claims.

When a plaintiff raises a Title VII claim, only "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). As such, "an individual employee/supervisor … may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). This Court thus must construe Pilling's Title VII claims against Foreman as being raised against him in his official capacity, i.e., as against the Department, and dismiss Pilling's personal capacity Title VII claim against Foreman, to the extent she purports to raise such claims. *See Wathen*, 115 F.3d at 406 (concluding that "Congress did not intend individuals to face liability under the definition of employer[.]") Accordingly, the Court should dismiss Foreman from Pilling's Title VII claim.

## II. Plaintiff cannot maintain tort claims under the FTCA.

### A. The United States is the only proper defendant for Plaintiff's tort claims.

The Court should dismiss Plaintiff's tort claim because she failed to name the United States as a defendant, and she may not pursue those tort claims against Lloyd Austin or Peter Foreman. As a sovereign, the United States is immune from suits against it, except where it has consented to be sued. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA waives the United States' immunity in certain state law tort actions and allows a plaintiff to bring certain tort claims against the federal government. *Id*. The FTCA provides the exclusive remedy for a suit for damages "for injur[ies] or loss of property… resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment;" this remedy is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee." 28 U.S.C. § 2679(b)(1). This statute only permits civil actions against the United States for money damages arising out of torts committed by a federal employee acting

within the scope of his or her employment and does not permit tort actions against individual federal employees or agencies. *See id*. *See also Henson v. NASA*, 14 F.3d 1143, 1147 (6th Cir. 1994) (finding that the FTCA "shields federal employees from liability for common law torts committed within the scope of employment."); *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) (stating that the United States, and not the responsible agency, is the proper defendant in an FTCA suit). Under the FTCA, the only proper defendant for Plaintiff's tort claims is the United States, and the Court should dismiss the tort claims against Lloyd Austin.

Foreman is an improper defendant because the challenged actions were within the scope of his employment. An FTCA claim "is exclusive of any other civil action or proceeding for money damages by reason of" any injury "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." *Id.* § 2679(d)(1).

The Attorney General has delegated authority to the U.S. Attorneys to certify that a defendant federal employee was acting within the scope of his employment. *See* 28 C.F.R. § 15.4(a). The U.S. Attorney for the Western District of Michigan certified that "Foreman was acting within the scope of his employment as an employee of the United States of America at the time of the alleged incidents." (Ex. 3, Cert.) Pilling's pleadings confirm that the challenged actions were within the scope of Foreman's employment, as she alleges that Forman "was acting under

the color of [his] authority," as "an official of [a] public entity," and "under the supervision and control of [the Department]," and that the Department "is liable for the acts and/or omissions of its employees pursuant to respondeat superior." (Compl. ¶¶ 26-28, PageID.6.) Once the certification is filed with the court, the FTCA provides that the action be deemed a tort action against the United States and the United States is substituted as the party defendant for Foreman. 28 U.S.C. § 2679(d).

**B. Plaintiff failed to exhaust her administrative remedies under the FTCA.**

Plaintiff cannot bring her tort claims against the United States because she failed to allege that she met the FTCA's presentment and exhaustion requirements. Before filing suit under the FTCA, a plaintiff must present the claim to the appropriate agency—here, the Department of Defense—and wait for the agency to deny the claim or for six months. *See* 28 U.S.C.§ 2675(a). The FTCA provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

The complaint does not allege any facts showing that Plaintiff exhausted her tort claims. For these reasons, the complaint fails to state a claim under the FTCA upon which the Court may grant relief and the Court should dismiss the tort claims.

**C. The FTCA's statute of limitations bars Pilling's tort claims**

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by

the agency to which it was presented." 28 U.S.C. § 2401(b). As explained above, Pilling did not present a tort claim to the Department "in writing," and the latest of the challenged actions occurred on July 30, 2021, more than two years before Pilling filed this suit. (Compl. ¶ 64, PageID.16.) Accordingly, the FTCA's statute of limitations bars Pilling's tort claims.

### D. The FTCA does not waive sovereign immunity to Plaintiff's tort claims.

Pilling asserts a battery claim against Foreman and an intentional infliction of emotional distress claim against both Defendants. (Compl. ¶¶ 103–114, PageID.23–24.) But the FTCA does not waive sovereign immunity to "[a]ny claim arising out of . . . battery." 28 U.S.C. § 2680(h). The tort claim against Foreman thus requires dismissal. And because Pilling's battery and intentional infliction of emotional distress claims arise from the same facts, and because her intentional infliction of emotional district claim "aris[es] out of battery," the FTCA does not waive sovereign immunity to it either. *See United States v. Shearer*, 473 U.S. 52, 55 (1985) ("We read this provision to cover claims . . . that sound in [a non-excluded tort] but stem from [an excluded tort] committed by a Government employee."); *Satterfield v. United States*, 788 F.2d 395, 400 (6th Cir. 1986) (dismissing negligence claim because the complaint actually set forth an intentional tort claim and therefore, fell within § 2680(h)); If the alleged conduct constitutes a tort listed in § 2680—and here Pilling's claims arise from Foreman's alleged actions—then this Court has no jurisdiction to hear Plaintiff's tort claim of intentional infliction of emotional distress.

## III. Pilling has withdrawn her claim under the D.C. Human Rights Act.

Counts III and IV of Pilling's complaint alleges claims under the DC Human Rights Act, D.C. Code 2-1401.01, *et seq*. However, Plaintiff has already withdrawn her claims under the D.C. Human Rights Act and they should be dismissed. (ECF No. 18, PageID.330; ECF No. 15, PageID.170 ("after reviewing Defendants' submission . . . Plaintiff's claims based upon DC statutes (Counts Three and Four) are withdrawn as they are not viable.").)

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's complaint with prejudice.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: December 23, 2024

*/s/ Carolyn A. Almassian*
CAROLYN A. ALMASSIAN (P63229)
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
Carolyn.Almassian@usdoj.gov
Attorney for Defendant

Exhibit 1

**BEFORE THE U.S. DISTRICT COURT, DISTRICT OF COLUMBIA**
**1:24cv259**

DECLARATION OF GABRIELA C. REITAN

I, Gabriela C. Reitan, declare as follows, pursuant to 28 U.S.C. § 1746:

1. I have worked in the Equal Employment Opportunity (EEO) Office with the Defense Logistics Agency (DLA) since 1991. I am an EEO Specialist/EEO Complaints Manager at the DLA Headquarters (HQs) Office of EEO and Diversity (DO), Complaints and Compliance Division (DO-C). I have been in this position since 2010. There are seven (7) EEO offices within DLA. One at the DLA Headquarters EEO Operations Division (DO-S) at Fort Belvoir, VA, and six other offices at regional Major Subordinate Commands (MSC). One of my responsibilities include overseeing all DLA EEO data input for the application platform Entellitrak (ETK), which is the official DLA database that manages/tracks EEO cases, and when asked I conduct database searches for previous EEO activity (formal complaints, pre-complaints, or contacts).

2. The DLA HQs Office of EEO and Diversity (DO) is responsible for ensuring agency-wide compliance with federal EEO statutes, regulations, and executive orders. We provide guidance to MSC EEO Offices in support of daily operations and advise DLA leadership on EEO and diversity-related issues.

3. Ms. Brenda Fleming was a Complaints Manager (EEO Specialist) for the HQs EEO Operations Division (DO-S) and departed DLA for another federal agency on or about April 2024. I was requested to locate documents Plaintiff's counsel alleges were sent to Ms. Fleming on November 19, 2023, purportedly establishing Plaintiff's formal charge of discrimination. I conducted a thorough search of the EEO database and files in the possession, custody and control of the DLA HQs EEO Office for records responsive to the request. The ETK EEO database had two contacts, contact numbers PRE-000342-2021 and PRE-000137-2022 made by the Plaintiff on July 19, 2021, and February 16, 2022, respectively. Plaintiff did not pursue an EEO complaint for either contact. See Exs. A & B.

4. The DLA EEO Office previously utilized the EEO database iComplaints up until on or about January 2023. All data from iComplaints was migrated to the ETK EEO database, the current record repository for all matters related to EEO complaints. Both iComplaints and the ETK EEO databases tracks contacts, pre-complaints, and formal complaints, store documents and track timelines for the DLA EEO Office.

5. DLA Standard Operating Procedure (SOP) 1440.02-1, "Equal Employment Opportunity (EEO) Complaints Program," effective January 31, 2018, requires DLA EEO personnel to utilize iComplaints (now ETK EEO) when an individual raises workplace issues or concerns with an EEO professional, either seeking information pertaining to their individual EEO rights (inquiry), or to initiate an EEO pre-complaint. DLA SOP 1440.02-1 requires DLA EEO Counselors and Specialists to update iComplaints' (now ETK) events and upload all counseling/ documents into iComplaints within two (2) business days of executing, completing, or receiving any document

required to be maintain as part of the complaint file. This would include contacts or complaints in the pre-complaint or formal stage.

6. The DLA HQs EEO Office maintains a share drive repository, which consists of electronic folders in a network used to store, search, and access files among the HQs EEO team. I have also searched this repository and was unable to locate a complaint related to Stacey Pilling (Plaintiff). The only document I was able to locate that was sent to Brenda Fleming was a letter dated October 4, 2023, where Plaintiff, through her counsel, requested a right to sue letter from DLA. I obtained this letter July 19, 2024, from Kimberly R. Lewis when I inquired if Ms. Lewis had any documents for the Plaintiff.

8. After conducting a good faith search of DLA HQs EEO files, including the ETK EEO database, inquiring with relevant DLA HQ EEO personnel and the relevant DLA MSC EEO office, I have not been able to find or identify any record from Plaintiff's counsel Mr. Ezra Glazer within DLA HQ EEO Office possession, custody or control from November 19, 2023, purporting to establish Plaintiff's formal charge of discrimination.

I declare under penalty of perjury that the foregoing is true and correct. Executed 22 July 2024 at Ft. Belvoir, VA.

GABRIELA C. REITAN
EEO Specialist
Complaints and Compliance Division

# A

DLA ETK EEO Prod 3.5.0 fad0015s (Super Processor)

Create a PDF Document | Edit Case **As of:** 07/22/2024 1:46:46 PM

## Case Details

# PRE-000342-2021

**Case Type:** EEO Contact **Complainant:** Pilling, Stacey **Processor:** Curtis , Angela **Case Manager:** Gay, Dominica

Status: EEO Contact Closed Last Event: EEO Contact Closure Last Event Date: 7/19/2021 Age of Case: 0 Days Left: Start Date: 7/19/2021 Deadline:

### Case Details

#### Case Notes

Subject: On July 19,2021 Ms. Beth Cheek, SAPR Program Manager emailed the DLA EEO Deputy Director at approximately 1003 hrs and stated an employee of DLA Disposition Services contacted her about a sexual harassment/assault matter on July 16, 2021. The employee stated they did not feel comfortable contacting the DLA Disposition Services EEO office. On July 19, 2021, Deputy Director contacted the AP (Dr. Stacey Pilling, Director, Resource Management, DLA, Disposition Services Battle Creek, MI at 1523hrs. During the telephone call Dr. Pilling stated that this was an informational inquiry. She described inappropriate behaviors pertaining to DLA Disposition Services, Chief of Staff, Mr. Pete Foreman. She did not allege sexual harassment and did not want to enter the pre-complaint stage at the moment. She was told about her rights, timeframes, the DLA Anti-Harassment Program and provided the DLAI on the Workplace Harassment Program. Dr. Pilling stated that she wanted to read the information and would contact the EEO office no later than Wednesday if she wanted to move forward. The HQs EEO Deputy Director notified the DLA EEO Director of the potential inappropriate behavior. An EEO Intake was completed and a Notice of Contact letter will be provided to the AP.

#### Office Information

Complaint Against Office

Complainant

**Personal Information**

| | |
|---|---|
| Title | |
| First Name | Stacey |
| Middle Name | |
| Last Name | Pilling |
| Suffix | |
| UID | UID0000006426 |

**Employment Information**

| | |
|---|---|
| Pay Plan | |
| Grade | |
| Step | |
| Series | |

**Contact Information**

| | |
|---|---|
| Preferred Email | |
| Alternate Email | |

**Work Cell Phone**

**Home Phone**

**Work Phone**

**Complainant Address(es)**

No Complainant Address has been entered for this Case.

**Privacy Act Statement:** This information is protected under the provisions of the Privacy Act of 1974. 26 CFR 1614.601 authorizes collection of this information.

Case Contacts

There are no contacts for this Case.

Claims

**Accepted**

There are no accepted claims for this case.

**Alleged**

There are no alleged claims for this case.

**Not Formally Alleged**

There are no 'not formally alleged' claims for this case.

**Dismissed**

DLA ETK EEO Prod 3.5.0 fad0015s (Super Processor)

Pre-Remand Claims

**Accepted**

There are no accepted claims for this case.

**Alleged**

There are no alleged claims for this case.

**Not Formally Alleged**

There are no 'not formally alleged' claims for this case.

**Dismissed**

There are no dismissed claims for this case.

Events

| Event Category | Event | Event Date | 462 Mapping | Updated By | Comments | Hours Spent | Cost ($) |
|---|---|---|---|---|---|---|---|
| Contact Processing | EEO Contact Processing | 07/19/2021 | Contact Start | gdk7302 | Autogenerated | .00 | 0 |

DLA ETK EEO Prod 3.5.0 fad0015s (Super Processor)

| Category | | Date | Mapping | By | Spent | |
|---|---|---|---|---|---|---|
| Contact Processing | Initial Response from EEO to Customer | 07/19/2021 | | gdk7302 | .00 | 0 |
| Contact Closure | EEO Contact Closure | 07/19/2021 | Contact Closed | DDG0107 | .00 | 0 |

Statutes

There are no Statutes for this case.

Powered by

# B

DLA ETK EEO Prod 3.5.0 fad0015s (Super Processor)

Create a PDF Document | Edit Case **As of:** 07/22/2024 1:44:32 PM

## Case Details

# PRE-000137-2022

**Case Type:** EEO Contact **Complainant:** Pilling, Stacey **Processor:**
**Case Manager:** Johnson, Beverly

Status: EEO Contact Open Last Event: Initial Response from EEO to Customer Last Event Date: 2/16/2022 Age of Case: 887 Days Left: Start Date: 2/16/2022 Deadline:

### Case Details

#### Case Notes

Subject: Ms. Stacey Pilling emailed the EEO Deputy Dir. on February 16, 2022, regarding harassing behavior on a CoS from Battle Creek. The CoS from Battle Creek made comments about an employee having a big forehead. The EEO Deputy Dir. informed Ms. Piling to contact the EEO office if she believed the behavior is discriminatory or if she believes the harassing behavior does not fall under the purview of EEO to contact the Anti-Harassment office Mr. Darryl Roberts. Ms. Piling's previous concern was elevated to the DLA CoS, Mr. Eric Smith.

#### Office Information

**Office** G3 - DLA Logistics Operations (J3/4)

**Complaint Against Office**

Complainant

#### Personal Information

| | |
|---|---|
| First Name | Stacey |
| Middle Name | |
| Last Name | Pilling |
| Suffix | |
| UID | UID0000006537 |

**Employment Information**

---

| | |
|---|---|
| Pay Plan | |
| Grade | |
| Step | |
| Series | |

**Contact Information**

---

| | |
|---|---|
| Preferred Email | |
| Alternate Email | |
| Personal Cell Phone | |
| Work Cell Phone | |
| Home Phone | |
| Work Phone | |

**Complainant Address(es)**

---

DLA ETK EEO Prod 3.5.0 fad0015s (Super Processor)

| Country | Primary Address | Address Type | Address 1 | Address 2 | City | State/Province | ZIP/Postal Code |
|---|---|---|---|---|---|---|---|
| United States | Yes | Home | | | | | |

**Privacy Act Statement:** This information is protected under the provisions of the Privacy Act of 1974. 26 CFR 1614.601 authorizes collection of this information.

Case Contacts

There are no contacts for this Case.

Claims

**Accepted**

There are no accepted claims for this case.

**Alleged**

There are no alleged claims for this case.

**Not Formally Alleged**

There are no 'not formally alleged' claims for this case.

**Dismissed**

There are no dismissed claims for this case.

**Accepted**

There are no accepted claims for this case.

**Alleged**

There are no alleged claims for this case.

**Not Formally Alleged**

There are no 'not formally alleged' claims for this case.

**Dismissed**

There are no dismissed claims for this case.

Events

| Event Category | Event | Event Date | 462 Mapping | Updated By | Comments | Hours Spent | Cost ($) |
|---|---|---|---|---|---|---|---|
| Contact Processing | EEO Contact Processing | 02/16/2022 | Contact Start | RDO0023 | Autogenerated | .00 | 0 |
| Contact Processing | Initial Response | 02/16/2022 | | RDO0023 | | .00 | 0 |

| Category | Date | Mapping | By | Spent |
|---|---|---|---|---|
| from EEO<br>to<br>Customer | | | | |

Statutes

There are no Statutes for this case.

Exhibit 2

**Silverman, Bradley (USADC)**

**From:** Ezra Glaser <ezra@ebgassociates.com>
**Sent:** Saturday, July 20, 2024 11:48 AM
**To:** Silverman, Bradley (USADC)
**Subject:** [EXTERNAL] Re: EEO Complaint in Pilling v. Austin

Do your own research and look at the complaint.

Get Outlook for iOS

---

**From:** Silverman, Bradley (USADC) <Bradley.Silverman@usdoj.gov>
**Sent:** Saturday, July 20, 2024 11:41:16 AM
**To:** Ezra Glaser <ezra@ebgassociates.com>
**Subject:** EEO Complaint in Pilling v. Austin

Hi Ezra, I contacted the EEO office, and they have no record of having ever received an EEO complaint from Dr. Pilling. Could you please send me a copy of the complaint that she submitted on November 19, 2023? Thank you.

Best,

**Bradley G. Silverman**
Assistant U.S. Attorney
Civil Division | U.S. Attorney's Office
601 D Street NW, Washington, DC 20530
(202) 252-2575

Exhibit 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STACEY PILLING,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD AUSTIN, as U.S. SECRETARY OF DEFENSE, and PETER FOREMAN individually and in his official capacity,<br><br>Defendants.<br>_______________________________________/ | Case No. 1:24-cv-01293<br><br>Hon. Hala Y. Jarbou<br>U.S. District Chief Judge<br><br>Hon. Phillip J. Green<br>U.S. Magistrate Judge |

**CERTIFICATION DEEMING DEFENDANT PETER FOREMAN TO BE A FEDERAL EMPLOYEE ACTING WITHIN THE SCOPE OF EMPLOYMENT**

Pursuant to 28 U.S.C. § 2679(d) and by virtue of the authority vested in me by 28 C.F.R. § 15.4, I hereby certify:

1. I have read the Complaint filed in the above captioned case.

2. On the basis of information now available, for all time periods relevant to the incidents alleged in the Complaint filed in the above captioned litigation, Defendant Peter Foreman was acting within the scope of his employment as an employee of the U.S. Department of Defense, Defense Logistics Agency, at time of the alleged incidents.

3. The United States is automatically substituted as the defendant for Counts V and VI of Plaintiff's Complaint. 28 U.S.C. § 2679(d)(4).

Certified this 20th day of December, 2024

Mark Totten
_______________________________
MARK A. TOTTEN
United States Attorney
Western District of Michigan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY PILLING,

Plaintiff,

v.

LLOYD AUSTIN, as U.S. SECRETARY OF DEFENSE, and PETER FOREMAN individually and in his official capacity,

Defendants.
_____________________________________/

Case No. 1:24-cv-01293

Hon. Hala Y. Jarbou
U.S. District Chief Judge

Hon. Phillip J. Green
U.S. Magistrate Judge

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.2(b)(ii), the undersigned certifies that Defendants' Memorandum in Support of Their Motion to Dismiss or Alternatively, For Summary Judgment, complies with the type-volume limitation and contains no more than 10,800 words as provided by Local Civil Rule 7.2(b)(i). A word count was made using Word for Microsoft 365 and the memorandum contains 5,363 words.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: December 23, 2024

*/s/ Carolyn A. Almassian*
CAROLYN A. ALMASSIAN (P63229)
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
Carolyn.Almassian@usdoj.gov
Attorney for Defendant