UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACEY PILLING,

    Plaintiff,

v.

PETER HEGSETH, et al.,

    Defendants.
_____/

Case No. 1:24-cv-1293

Hon. Hala Y. Jarbou

## OPINION

Plaintiff Stacey Pilling brings this action against Defendants Peter Hegseth, in his official capacity as United States Secretary of Defense,[1] and Peter Foreman, a colleague at the Defense Logistics Agency ("DLA") in both his individual and official capacity. (Compl., ECF No. 2.) Pilling alleges that Defendants engaged in sex-based discriminatory conduct and maintained a hostile work environment, violating Title VII of the Civil Rights Act. She also alleges two state law tort claims for intentional infliction of emotional distress ("IIED") and battery. Before the Court is Defendants' motion to dismiss. (ECF No. 33.) For the reasons discussed herein, the Court will dismiss Pilling's claims.

### I. BACKGROUND

Pilling started working for the United States Department of Defense ("DOD") in 2016. (Compl. ¶ 29.) She worked in the Department's DLA and was stationed in Battle Creek, Michigan.

---

[1] Pilling initially brought this suit against Defendant Lloyd Austin in his official capacity. Because Lloyd Austin is no longer serving as the Secretary of Defense, under Rule 25(d), the Court automatically substitutes his successor, Peter Hegseth. Fed. R. Civ. P. 25(d).

(*Id.* ¶¶ 29-30.)  In 2019, she started working as the DLA's Deputy Director of Resource Management.  (*Id.* ¶ 33.)  Around a year later she was promoted to Director of the DLA's Disposition Services Resource Management.  (*Id.* ¶ 30.)  At the DLA, she worked alongside Defendant Foreman, who was the DLA's Disposition Services' Chief of Staff, and initially higher ranking than Pilling.[2]  (*Id.* ¶ 31.)

According to the complaint, from about 2019 to 2021, Foreman harassed Pilling on a near-daily basis.  (*See id.* ¶¶ 35-66.)

Pilling alleges that Foreman conducted inappropriate pranks on multiple occasions and in varying ways.  (*See id.* ¶¶ 40, 42, 46, 52, 56.)  In one incident, Forman allegedly put a dead bat on Pilling's desk.  (*Id.* ¶ 46.)  In another, Foreman placed a "fart machine" under conference room tables and in Pilling's office, activating the device whenever she spoke to embarrass and humiliate her.  (*Id.* ¶ 40.)  Foreman also allegedly placed a "fart bomb" in Pilling's trash can, the smell of which was allegedly so odious that Pilling's supervisor sent her home for the rest of the day.  (*Id.* ¶ 42.)

Foreman's alleged harassment progressed beyond "pranks" and turned into assaultive conduct.  (*Id.* ¶¶ 52, 56-57.)  He purportedly threw "a live cockroach towards [Pilling]'s breast area," and "jokingly" placed her in a headlock on multiple occasions.  (*See id.*)

Foreman also allegedly made comments on Pilling's physical characteristics and bodily functions.  (*Id.* ¶¶ 39-40, 42, 45, 47.)  During a September 11th memorial event, Forman allegedly mocked Pilling's legs in front of their colleagues, loudly stating: "Look at those chicken legs—they are blinding me.  So white."  (*Id.* ¶ 47.)  And whenever Pilling used the bathroom, Foreman

---

[2] Foreman was not, however, Pilling's supervisor, and Pilling eventually obtained the same rank as Foreman; of note, Foreman's "position as the [Chief of Staff] was artificially elevated so that he had operational control."  (*See* Compl. ¶¶ 31-34, 43.)

2

would allegedly announce that she should take an air freshener or ask her inappropriate questions. (*Id.* ¶ 39.) He allegedly "had several lines that he repeated frequently in an effort to embarrass and harass [Pilling], particularly in front of [her] peers." (*Id.* ¶ 45.)

According to the complaint, Foreman also insulted Pilling's intellect. (*Id.* ¶ 44.) He would frequently talk down to her when she made mistakes in front of coworkers, telling her that she needed to improve. (*Id.* ¶¶ 41, 44.) Foreman would also comment on Pilling's education and credentials in an allegedly disparaging manner, and Foreman would attempt to undermine Pilling in front of colleagues, refusing to let her present to other directors at certain briefings. (*Id.* ¶¶ 41, 44, 48.)

Pilling alleges that Foreman mocked her clothing, too. (*See id.* ¶¶ 36-38.) He asked her why she was "wearing golf pants to work?" (*Id.* ¶ 36.) And he made fun of her shoes, "consistently" asking her if she put duct tape on her grey loafers. (*Id.* ¶ 38.) Foreman would also "call in the Director of Disposition Services . . . to give him an opportunity" to degrade Pilling's attire. (*Id.* ¶ 37.)

Overall, Pilling alleges pervasive and consistent harassment from Foreman that lasted from the early days of her employment through (at least) July 1, 2021. Pilling also alleges that Foreman treated others with similar disrespect, which caused at least two other employees to resign. (*Id.* ¶¶ 34, 67.)

Foreman's alleged harassment drove Pilling to complain to higher-ups within the DLA. She first complained about Foreman's conduct to one of her supervisors, Michael Cannon, the Director of Disposition Services. (*Id.* ¶¶ 43, 54.) She claims that Cannon talked to Foreman numerous times; however, their talks never changed Foreman's behavior. (*See id.* ¶¶ 54-57, 63.) She then contacted the DLA's Sexual Assault Response Coordinator, Bethrece Cheek. (*Id.* ¶ 58.)

3

Cheek responded that her claims fell under the Equal Employment Opportunity ("EEO" or "EEOC") office and referred her to Angela Curtis, the Deputy Director of the DLA EEO. (*Id.*) Pilling allegedly spoke to Curtis on July 19, 2021. (*Id.* ¶¶ 7, 58-59.) Curtis told Pilling that her issues did not fall under the EEO, and instead she should contact Human Resources. (*Id.* ¶ 59.) After contacting Human Resources, an HR representative told Pilling that HR would investigate her complaints. (*Id.* ¶ 65.)

On or around August 15, 2021, Pilling left her position at Disposition Services in Battle Creek and moved to DLA Headquarters in Virginia. (*Id.* ¶ 65.) On April 1, 2022, the DLA Office of the Inspector General ("OIG") started an investigation into Pilling's complaints about Foreman. (*Id.* ¶ 10.) Special Agent David York spearheaded the investigation and found Pilling's complaints "substantiated." (*Id.* ¶¶ 11-15; OIG Report, ECF No. 42-2.)

On September 14, 2023, Pilling and her attorney contacted York to get a right to sue letter, assuming it was the proper course to commence a civil action. (Compl. ¶ 16.) Around two weeks later, York wrote back, instructing Pilling to contact "the EEO office (brenda.fleming@dla.mil) and the FOIA office (judith.mansfield@dla.mil)" for assistance. (*Id.* ¶ 17.) On October 4, 2023, Pilling (through her counsel) followed those instructions, emailing Brenda Fleming—the DLA's EEO contact. (*Id.* ¶ 18.) Fleming responded that she did not find records in the "DLA's EEO database" showing that Pilling initiated an EEO complaint. (*Id.* ¶ 19.) Pilling's counsel then emailed York again, asking him why the OIG investigation did not create a complaint in the EEO's database. (*Id.* ¶ 20.) York, for the second time, directed Pilling to contact Fleming. (*Id.* ¶ 21.)

On November 15, 2023, Pilling's attorney sent another email to Fleming, this time attaching a "charge of discrimination letter signed by [Pilling]." (*Id.* ¶ 22.) Pilling claims she never heard back from the EEO. (*Id.*)

4

On January 29, 2024, Pilling filed this action in the U.S. District Court for the District of Columbia. After the case was transferred to this Court, Pilling withdrew her claims under the D.C. Human Rights Act, leaving her claims for sexual harassment (Count I) and hostile work environment (Count II) under Title VII; battery (Count V); and intentional infliction of emotional distress (Count VI). However, because "sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment," *Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001), Counts I and II are construed as a sexual harassment-based hostile work environment claim under Title VII.

Defendants have moved to dismiss Pilling's Complaint under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.*

5

(quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true."  *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

### III. ANALYSIS

#### A. Title VII Claims

Pilling's sexual harassment claim is based in Title VII of the Civil Rights Act.  Defendants argue that Pilling failed to exhaust her administrative remedies and failed to state a claim under Title VII.

#### 1. Exhaustion

Before federal government employees bring a lawsuit under Title VII, they must exhaust their administrative remedies.  *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009).  To do so, the aggrieved employee must: (1) initiate contact with an EEO counselor within 45 days of the discriminatory incident, 29 C.F.R. § 1614.105(a)(1); (2) file a complaint of discrimination with the allegedly discriminatory agency, 29 C.F.R. § 1614.106(a); and (3) and receive a final agency decision, 29 C.F.R. § 1614.110(a).[3]  *Hykes v. Lew*, No. 16-5509, 2017 WL 4863108, at *1 (6th Cir. Mar. 1, 2017) (citing *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008)).  Once the employee receives the final agency decision, they can either file an appeal with the EEOC, 29 C.F.R. §§ 1614.401(a), 1614.402(a), or file a lawsuit in federal court within ninety days, 29 C.F.R. § 1614.407(a).  *Hykes*, 2017 WL 4863108, at *1 (citing *Lockett*, 259 F. App'x at 786).  Failure to

---

[3] Of note, both parties seem to misunderstand the proper administrative exhaustion requirements, erroneously suggesting that Pilling needed a right to sue letter, which is the process to allege EEO complaints against a non-government employer.  29 C.F.R. § 1601.28.  Pilling (through her attorney) continued to pursue a right to sue letter despite being directed to the proper EEO complaint process by government officials. (Compl. ¶¶ 17-23.)  The Court will construe Pilling's arguments liberally regarding her failure to comply with the proper procedure.

exhaust these administrative requirements "is an appropriate basis for dismissal." *Id.* at *2 (citing *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003)).

Accepting Pilling's alleged facts as true, and drawing reasonable inferences in her favor, Pilling satisfied the first administrative exhaustion requirement: initiating contact with an EEO counselor within 45 days of the alleged discriminatory conduct. By contacting Curtis (the Deputy Director of the DLA EEO) to discuss her discrimination claims, Pilling satisfied the regulation's pre-complaint requirements to "(1) contact an agency official logically connected with the EEO process, . . . (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination." *Johnson v. Cohen*, 6 F. App'x 308, 311 (6th Cir. 2001) (describing how an aggrieved employee initiates contact with an EEO counselor); (*see* Compl. ¶ 59). Pilling allegedly contacted Curtis on July 19, 2021, well within the 45 day time period of at least one of Foreman's actions that created the hostile work environment.[4]

To satisfy the second administrative exhaustion requirement, Pilling must have filed a complaint of discrimination with her employer agency. 29 C.F.R. § 1614.106(a). Pilling signed and filed what she deems a "formal charge of discrimination" on November 19, 2023. (Compl. ¶ 22.) This formal charge, signed by Pilling and sent to her employer agency, outlined Foreman's alleged misconduct and provided the employer agency with Pilling's contact information, thus meeting the criteria of a discrimination complaint under 29 C.F.R. § 1614.106(c). (*Id.*) Pilling

---

[4] Pilling alleges that Foreman's continued harassment—a series of pranks, assaultive conduct, comments, etc.—created a hostile work environment. Under the continuing violation doctrine for Title VII claims, "the existence of any act that is part of the hostile work environment within the forty-five day time limit causes the actionable violation to encompass conduct that occurred outside the limit." *Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (citing *McFarland v. Henderson*, 307 F.3d 402 (6th Cir. 2002)). Thus, because Pilling alleges Foreman's conduct, in totality, created a hostile work environment, and she initiated contact with Curtis within forty-five days of at least one of those acts, she has satisfied timeliness for each alleged act of harassment that contributed to the hostile work environment, regardless of whether such acts were within forty-five days of the July 19, 2021 conversation with Curtis.

needed to file this complaint with her employer agency before filing the lawsuit, which she did.[5] 29 C.F.R. § 1614.106(a).  Thus, she satisfied the requirements of this second administrative requirement.

As the third and final administrative requirement, Pilling needed to receive a final agency decision before filing her lawsuit.  She recognizes that she did not wait for such final agency action before filing the lawsuit, so she did not properly exhaust her administrative requirements.  (Compl. ¶¶ 22-23.)  But Pilling contends that such noncompliance is excusable.

Pilling argues that she only failed to meet her administrative exhaustion requirements because she was given the "runaround."  Essentially, Pilling argues that because she was never given instructions on how to comply with the administrative exhaustion requirements, and the agency unreasonably prolonged a final decision on her complaint, Defendants should be estopped from moving for dismissal based on failure to exhaust.[6]  The Court disagrees.

"A party attempting to estop the government 'bears a very heavy burden.'" *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) (quoting *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004)).  Estoppel generally requires: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Id.* (quoting *Mich. Express*, 373 F.3d at 427).  But in addition to the traditional elements, to estop the government, Pilling

---

[5] After Pilling initiated contact with Curtis, Curtis should have sent Pilling a notice outlining her rights and the administrative exhaustion requirements.  29 C.F.R. § 1614.105.  While 29 C.F.R. § 1614.106(b) requires Pilling to have filed the complaint within 15 days of receiving that notice, this provision merely establishes the point at which it would be too late to file this complaint.  Compliance with this timeframe is contingent upon receipt of the notice, which, according to the allegations, Curtis never sent, so the 15-day timeline is irrelevant to this analysis.

[6] Exhaustion is a necessary prerequisite to filing a Title VII claim in court, but it is not a jurisdictional bar, so "[c]ourts may evaluate whether it would be proper" to apply equitable doctrines to forgive noncompliance.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

"must show some 'affirmative misconduct.'" *Id.* (citing *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001)).

The Court of Appeals provided guidance on what constitutes "affirmative misconduct" in *Michigan Express*, explaining that "'affirmative misconduct' is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant. The party asserting estoppel against the government bears the burden of proving an intentional act by the agent of the government and the agent's requisite intent." 374 F.3d at 427. In that case, the Department of Agriculture informed the plaintiffs that due to violations of food-stamp program laws and regulations, they could no longer participate in the program and would face penalties if they sold or transferred their business. *Id.* at 426. Months later, an Assistant United States Attorney sent a letter informing the plaintiffs that the government would "not pursue a False Claims Act action or other federal action" for their violations. *Id.* Relying on this letter, the plaintiffs sold their business, assuming that because the government would not pursue "other federal action," they could sell their business without the penalty. *Id.* Nonetheless, the government imposed a civil fine on the plaintiffs. *Id.* The Court held that even though the traditional elements of estoppel may be present, the plaintiffs did not show affirmative misconduct. It continued, explaining that attempts at good-faith advisement do not warrant estoppel against the government, even if it results in accidental misrepresentation of the plaintiff's legal rights or disposition and induced detrimental reliance.[7] *Id.* at 427. Unless the agent acted with malicious intent, estoppel against the government is not appropriate. *Id.* at 428.

---

[7] The Court of Appeals developed its "affirmative misconduct" definition from the principles sister circuits use, including the notion that "neither the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct." *Mich. Express*, 374 F.3d at 427 (quoting *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000)).

Pilling does not allege the requisite malicious intent to justify estoppel against the government.  With regard to the initial encounter with her EEO counselor, Pillings acknowledges that Curtis "did not feel that the issue fell under EEO and . . . stated the issues being presented fell within the Human Resources Department's purview."  (Compl. ¶ 59.)  The "purpose of the [exhaustion] requirement is to trigger an investigation" and allow the government to "initiate conciliation procedures in an attempt to avoid litigation."  *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).  While Curtis should have advised Pilling of her rights and the administrative exhaustion requirements, from the facts in the complaint, Curtis made a good-faith attempt to direct Pilling to resources that could help resolve her harassment claims.  "[P]unishing the good-faith and conscientious efforts of the government by an easy rule of estoppel 'might create not more reliable advice, but less advice.'"  *Mich. Express*, 374 F.3d at 428 (quoting *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 433 (1990)).  Much like the Court of Appeals in *Michigan Express*, here, the Court "wish[es] to avoid that consequence."  *Id.*

Similarly, Flemming should have acknowledged receipt of Pilling's EEO complaint and informed Pilling of her rights through the investigation process and final agency decision. However, as explained above, Flemming's alleged negligent failure to properly inform Pilling of her rights does not amount to affirmative misconduct.

With regard to unreasonably prolonged agency action, Pilling argues that she only failed to wait for a final agency decision because the agency was leaving her in an indefinite delay.  Not so.  An agency has 180 days to investigate a discrimination complaint once it is filed.  29 C.F.R. § 1614.106(e)(2).  Pilling filed her lawsuit in this Court on January 29, 2024, well before the conclusion of the 180-day deadline (May 17, 2024) for the agency to conduct its investigation. Because Pilling did not allow her employer agency ample time to conduct the required

10

investigation, this argument is unpersuasive. Defendants were still within the prescribed timeline to investigate her complaint. Operating according to the governing regulations is no delay, let alone an indefinite delay that justifies noncompliance with administrative exhaustion requirements.[8]

While the lack of affirmative misconduct is dispositive, Pilling's allegations do not demonstrate the traditional elements of estoppel. Pilling does not allege facts that indicate her failure to exhaust the administrative requirements was due to reliance on Curtis, Flemming, or even Special Agent York.[9] Pilling does not allege that any of the instructions—or lack thereof— from government officials insinuated she could not continue pursuing an EEO claim. Instead, the allegations indicate that failure to comply was, ultimately, the result of "garden variety" neglect, for which equitable doctrines do not apply. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) (explaining that an attorney's dereliction of their responsibilities does not justify applying equitable doctrines like tolling). Pilling could have requested a hearing or inquired into the status of her discrimination complaint, but the email submitting the complaint was "Plaintiff's counsel's final email to the DLA EEOC." (Compl. ¶ 22.) Pilling does not meet the high burden to demonstrate Defendants should be estopped from arguing that she failed to exhaust her administrative remedies. Because Pilling did not exhaust her administrative remedies before filing her lawsuit, her Title VII claims will be dismissed.

---

[8] Pilling cites *McCarthy v. Madigan*, 503 U.S. 140, 146-47 (1992), in support of the notion that an agency's indefinite delay justifies noncompliance with exhaustion requirements. But a delay is not indefinite when the regulation establishes a definite timeline and operates within it. *Id.* While *McCarthy* did not establish a bright line at which point a delay is unreasonable, neither the "nearly two months" of waiting time since filing the complaint, nor the complete 180-day investigation timeline, amounts to an unreasonable delay. *See Coit Indep. Joint Venture v. Fed. Savs. & Loan Ins. Corp.*, 489 U.S. 561, 582-83 (1989) (180-days is reasonable).

[9] Rather, had Pilling relied on Flemming and York, she may have at least understood the correct process for government employees to file Title VII claims. (Compl. ¶¶ 17-22.)

11

### 2. Failure to State a Claim

While Pilling's failure to exhaust is an independent cause for dismissal, even if Pilling satisfied the administrative prerequisites, she does not state a Title VII claim.

To establish a Title VII claim for a hostile work environment, Pilling must show: "(1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) employer liability." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (quoting *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009)). Even if the alleged facts leave little mystery for factors one, two, four, and five, Pilling does not sufficiently allege facts that show the harassment was based on sex.

Foreman's alleged actions are condemnable, but "Title VII 'does not prohibit all verbal or physical harassment in the workplace.'" *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 685 (6th Cir. 2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Courts are careful to "prevent[] Title VII from expanding into a general civility code." *Oncale*, 523 U.S. at 81. The plaintiff must show "discrimination because of sex." *Id.* (cleaned up).

Pilling's allegations show that DLA has had issues with Foreman and his disturbing "leadership style" for over 30 years. (Compl. ¶ 63.) And Foreman harasses individuals irrespective of their gender. (*E.g.*, Compl. ¶¶ 63, 67 (Foreman harassed other senior DLA leaders and belittled a male employee causing him to resign).) Pilling does not allege facts from which the Court can infer the harassment was based on sex; the allegations indicate this is how Foreman acts toward colleagues of both sexes. Thus, for the foregoing reasons, Pilling's Title VII claim fails.

**B. State Law Claims and the Federal Tort Claims Act**

Pilling's remaining claims are state common-law tort claims for battery and intentional infliction of emotional distress. She asserts the battery claim against Foreman in his individual and official capacities. She asserts the intentional infliction of emotional distress claim against the Secretary of Defense in his official capacity and Foreman in his individual and official capacities.

There is no question that Foreman was a federal employee at the time of his alleged conduct. *Laible v. Lanter*, 91 F.4th 438, 442 (6th Cir. 2024) (holding that "officers or employees of any federal agency" are covered by the Federal Torts Claim Act (citing 28 U.S.C. § 2671)). Thus, if Foreman was acting within the scope of his employment during the alleged tortious conduct, then the United States will be substituted as the defendant and the FTCA would govern the claim. *Dolan v. United States*, 514 F.3d 587, 592 (6th Cir. 2008) (citing 28 U.S.C. § 2679 ("Westfall Act")). If Foreman was not acting within the scope of his employment during the alleged tortious conduct, then the claims remain grounded in state common law. *Laible*, 91 F.4th at 445. Because she sued the Secretary of Defense in his official capacity, that claim will be dismissed; either Foreman was acting within the scope of his employment, and the Secretary of Defense is an improper party, *DMC-Memphis, Inc. v. Mutual of Omaha Ins. Co.*, 105 F. App'x 671, 675 (6th Cir. 2004) (explaining that dismissal is proper if an agency is named in the pleading rather than the United States), or Foreman was acting outside the scope of his employment and vicarious liability would not apply to the state law claims. *Hamed v. Wayne County*, 803 N.W.2d 237, 244 (Mich. 2011).

The Court must determine whether Foreman was acting within the scope of his employment while committing the alleged tortious conduct. The United States Attorney exercised its authority to certify that Foreman was acting within the scope of his employment. (Scope of Employment Certification, ECF No. 34-3). While that certification is subject to judicial review,

the burden is on the plaintiff to demonstrate that the employee was not acting within the scope of employment.  *Dolan*, 514 F.3d at 593.  The United States Attorney's certification "provides *prima facie* evidence that the employee was not acting in the scope of employment."  *Id.* (internal citation omitted).  "Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred."  *Id.* (cleaned up) (quoting *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996)).  The conduct in question occurred in Michigan.

In Michigan, an employee acts "within the scope of employment" when he is "engaged in the service of his master, or while about his master's business."  *Hamed*, 803 N.W.2d at 244.  "Independent action, intended *solely* to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment."  *Id.* (emphasis added).  However, even if "an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business."  *Id.*

The Court "need not make factual findings when the complaint's allegations, accepted as true," would confirm the United States Attorney's scope-of-employment certification.  *Cholewa v. United States*, No. 23-1278, 2024 WL 869550, at *3 n.1 (6th Cir. Feb. 29, 2024) (citing *RMI Titanium*, 78 F.3d at 1143).  Here, accepting the allegations as true, Foreman was acting within the scope of his employment.

According to the allegations, Foreman's harassing conduct was considered part of his "leadership style."  (Compl. ¶ 63.)  Even if his tactics violated agency policy and went against instructions, he deployed this harassment in furtherance of the agency's interest in maintaining discipline and effectuating his operational control as Chief of Staff.  DLA recognized this was how Foreman conducted himself, and let it persist for over 30 years.  (*Id.*)  DLA's patience with

14

Foreman reflects an implicit endorsement of his impact on overall operations, as if his presence provided some benefit to the agency. To DLA, apparently the ends justified the means. Foreman's conduct was not *solely* to further his independent interests, it was in furtherance, or at least in the interest, of his responsibilities at DLA. In fact, Foreman was open about how he considered his conduct to be an effective method of helping his colleagues reach their potential; Foreman stated that he was "going to be harder on [Foreman]" because he "expect[ed] more from [her] than [her] peers." (*Id.* ¶ 50.) Thus, Foreman was acting within the scope of his employment because it was for the purported benefit of the DLA. This claim falls under the FTCA and the United States will be substituted in as the proper defendant.

"The FTCA contains several exceptions to [its] broad waiver of sovereign immunity. Because the Act is a grant of jurisdiction, a court lacks subject-matter jurisdiction to adjudicate claims falling within exceptions to that grant." *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022). Pilling's battery claim falls into one such exception because Foreman is not an investigative or law enforcement officer. 28 U.S.C. § 2680(h) (preserving sovereign immunity for battery claims that are not brought against law enforcement). Thus, her battery claim against the United States under the FTCA will be dismissed.

The Court must next analyze Pilling's IIED claim against the United States under the FTCA. Contrary to Defendants' assertion, Pilling's IIED claim does not solely arise from allegations of battery. It is the entirety of Foreman's conduct—from the dead bat on her desk to the constant disparaging comments—that forms the basis of her IIED claim. It is not subject to the exception in § 2680(h). *Lovely v. United States*, 570 F.3d 778, 782 n.3 (6th Cir. 2009) (recognizing that IIED claims may proceed under the FTCA). However, because the FTCA preserves sovereign immunity for "[a]ny claim arising out of assault, battery, . . . [and] slander,"

15

the Court would evaluate the alleged IIED to the extent that it is not based in the claims listed in § 2680(h). *Id.* (citing *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) (analyzing an IIED claim to the extent it was not based in claims listed in § 2680(h))).

However, as both parties acknowledge (Defs.' Mem. in Supp. of Mot. to Dismiss 15-16, ECF No. 34; Pl.'s Resp. to Mot. to Dismiss 16, ECF No. 42), Pilling's IIED claim does not satisfy the statute of limitations for tort claims against the United States. "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues," or it is "begun within six months . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). This "section is a condition of the United States's waiver of sovereign immunity which is to be narrowly construed." *Chomic v. United States*, 377 F.3d 607, 615 (6th Cir. 2004) (citing *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979)).

Pilling relocated to the DLA headquarters on or about August 15, 2021. (Compl. ¶ 65.) Her claim must have accrued before that time because after relocating she was no longer subjected to Foreman's conduct, and she was aware of the misconduct before transferring. Pilling did not present her claim to the appropriate federal agency within two years of accrual. The Court cannot even constructively construe filing her complaint as satisfying this requirement, as she filed her lawsuit in January 2024, more than two years from accrual. While equitable tolling is available for this time bar, there is a presumption against it. *United States v. Kwai Fun Wong*, 575 U.S. 402, 408, 420 (2015). Pilling bears the burden of proving equitable tolling is proper. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). It is a heavy burden, as "[t]he doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstance beyond that litigant's control.'" *Id.* at

783 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). Pilling only argues that the severity of her allegations warrants a ruling on the merits; she does not address any legal arguments related to tolling and (once again) she does not overcome the principle that courts will not apply equitable tolling "when there has only been 'a garden variety claim of excusable neglect.'" *Chomic*, 377 F.3d at 615 (quoting *Ayers v. United States*, 277 F.3d 821, 828 (6th Cir. 2002)). Because she has not met her burden, her IIED claim will be dismissed for failure to comply with the FTCA's statute of limitations.

## IV. CONCLUSION

Pilling alleges condemnable and disturbing conduct by Foreman. However, she failed to exhaust her administrative remedies and failed to state a claim under Title VII. Her state law claims that derive from common law are properly asserted under the FTCA, but she failed to comply with the FTCA's requirements. Thus, her claims will be dismissed.

The Court will issue an order consistent with this Opinion.

Dated: May 7, 2025                    /s/ Hala Y. Jarbou
                                                                             HALA Y. JARBOU
                                                                             CHIEF UNITED STATES DISTRICT JUDGE